We're ready whenever you are, Mr. Martinez. Thank you, Your Honor. Michael Martinez, on behalf of the appellants, may it please the court. Appellants Natural Land Trust, Upstate Forever, and South Carolina Trout Unlimited initiated this citizen suit to stop and to obtain a remedy for Arabella Farms' repeated violations of the Clean Water Act's prohibition on illegal and unpermitted discharges of pollutants into our nation's waters. Arabella Farms' disregard of the act caused the dumping of literal tons of sediment into a critical tributary of the Isotope River, a popular trout fishing destination in Upstate South Carolina. This sediment choked off this valuable water resource and eliminated the clear, cold, well-oxygenated water that trout and its food supply depend on and that serves as an indicator for water quality and a healthy aquatic ecosystem. Arabella Farms' violations of the act damaged my client's property, organizational, and recreational interests, and they sought to exercise their right to citizen enforcement under the act, which is authorized to ensure that the public has a mechanism to restrain illegal and unpermitted discharges into our waterways. Citizen suits may be precluded in only two limited circumstances, neither of which apply here. The District Court fundamentally misapplied the Administrative Enforcement Diligent Prosecution provision to bar my client's suit, and we respectfully request reversal of the court's decision. I'd like to begin first with the District Court's error in rejecting the plain language of the Diligent Prosecution provision in construing the scope of that provision. The District Court held that the provision bars not only claims for civil penalties but also claims for injunctive relief, despite the clear text of the statute dictating that it applies only to civil penalty actions. The court relied entirely on the First Circuit's decision in situate, which as we pointed out in a Supplemental on Friday, was just overruled in a unanimous, en banc decision by the First Circuit. So, Counsel, on that issue, I think I understand the textual argument there. I think it has some persuasive effect. There's fairly compelling policy, I would say, reasons against that, but the text is the text. Here's my question. Let's assume I agree with you that an injunction action in a citizen suit is not excluded from a textual standpoint. To pursue an injunction, even a permanent injunction, you still have to establish the four factors of injunction that include not just a violation but a balancing of interest and all factors. Does Gwaltney, while not precluding an injunction from a jurisdictional standpoint, effectively mean you cannot get an injunction? How could you get an injunction given what Gwaltney people rely on, and then the citizen group, which has the right to bring the suit, how could you satisfy the elements of an injunction given Gwaltney, even if it's not jurisdictionally precluded? Well, I think in Gwaltney, the court held that the Clean Water Act citizen suit is limited to claims for ongoing violations of the Act. Agree. I don't think Gwaltney extends the text. I'm not trying to say Gwaltney may use Gwaltney to say the text includes injunctions. But in reaching that conclusion, and maybe you just say, well, that's dicta, so you don't consider it. But in reaching that conclusion, there's so much reasoning that would cut against an argument from an injunction. If you assume, which you'd have to at least at this point, I know you're not conceding that, that there's been a commencement, that it's diligent, that the regimes are comparable, in those circumstances, how could you ever get an injunction? Well, I think injunctive relief is especially well matched with the requirement for an ongoing violation. And the combination of Gwaltney's requirement of ongoing violation and the diligent prosecution bar restricting it to claims for injunctive relief, I think the risk that courts have said exists with allowing citizen suits to proceed when there's agency enforcement, is the risk of impeding agency's ability to negotiate with the polluters, with the defendants. And an injunctive relief doesn't really have that same risk because the court is not going to be able to order duplicative punishment with respect to injunctive relief. Well, it may be not, you say it wouldn't undermine that, but if the agency, and particularly here, DHEC, which has been designated as an appropriate agent based on the South Carolina regime, it goes through its enforcement actions, reaches an agreement, requires whatever it requires, and it could be substantial requirements. And then the citizens group come in and says, no, I don't think that's enough, the citizen has already done all that stuff. I mean, isn't that undermining those negotiating efforts? And again, that's a different question of whether you are barred jurisdictionally from bringing the injunction. I'm kind of going a step further and saying I agree with you, maybe that actually you have a point there, but I just don't see how an injunction could be established. You might still say there's a violation, maybe you say there's an ongoing violation, I just don't see how you ever meet the other elements of an injunction. I think the existence of an ongoing violation, which is required, presumes that there is some ongoing damage, ongoing discharge of pollutants of applicable waterway. Seeking injunctive relief would, of course, require us to prove some irreparable harm that would occur, and I think that a district court would be capable of managing that request for injunctive relief from a citizen suit while recognizing the agency enforcement that may have been ongoing, but the requirement of an ongoing violation will still have to be met, and allowing injunctive relief to proceed is appropriate so that citizens have the mechanism to stop ongoing violations. Can I ask you a question about the naming issue? Yes, your honor. So on the one hand, it feels very persnickety to say that if you know, I'm going to ask your friend on the other side about this, and one level their claim seems very, very persnickety. On the other hand, there's the sort of whole jurisdiction, small, not really jurisdiction, but rules like this should be clear. What's your best response to how freaking hard would it have been to just say the same organization in both your notice and the complaint? I mean, and that rule should be simple and straightforward and mechanical, and how hard would it really be to name the exact same entity on both forms? I suppose it wouldn't be extraordinarily difficult, but I think it is, it creates an extraordinarily technical application of that requirement. Oh, I agree that it is extraordinarily technical. And it really places form over substance when the contents of the letter communicated that there were two upstate South Carolina chapters of the national organization, Trout Unlimited, that their mission intends to promote and protect cold water fisheries like... Oh, no, no, I know, and lots of arguments, like in this case, there's no realistic danger that they didn't understand who they were hearing from, all of that, but the argument for Brightline rules is that if you don't have Brightline rules, there will be cases in which it's really hard to apply in all other things being equal, and that one way to get around that is just to say, I mean, it's really not that hard to comply with the Brightline rules, so maybe you guys, you know, I understand that in this case, it seems very technical because it strikes me as implausible that they can mount a plausible argument that they didn't understand who it was they were getting notice from, but once we go down that road, I can imagine cases where it is hard to figure out, and one way to just head that off at the pass is just say, it should just be the same Why shouldn't we say that? Because it creates somewhat of an onerous obligation. Copy and paste is onerous? Well, it creates a situation where potential plaintiffs need to, and you may have various organizations, various entities that want to pursue enforcement in a suit, and you end up in a situation where you have to specifically identify their corporate or entity structure in order to qualify for such a rule, and I don't think that's what the notice requirements in the provision or the regulation requires. And your honor, I'll next move to the issue of commencement. The diligent prosecution provision contains several requirements intended to guarantee the public's notice and participation in the administrative enforcement process that must be precluded, that must be satisfied before a citizen's suit may be precluded. Why should we, I've read your briefs on that, and I understand you advocate for the approach that the Milwaukee case does, which says the commencement arises when there's some public notice. That case even says that we're kind of merging that with the comparability analysis. It seems like, I mean, it's fine, I get the argument that you want public notice, and I get the argument in the comparable scheme standpoint, if there is or there isn't, that's a valid issue. It just seems to me like whether there's public notice has nothing to do with commence. I mean, that's just turning that word into something that it's not. I mean, commence means when you begin, and there may be public notice, there may not be, and I mean, the notice violation from DHEC says this is, you know, this is the commencement, and it goes through a whole equate whether there is or is not public notice to whether something has commenced or not. Respectfully, your honor, the problem with allowing a completely private document to trigger the preclusive effect of the diligent prosecution bar and bar citizen suits when they had no notice and no opportunity to participate in the administrative enforcement process thwarts the comparability requirement for comparable public notice of participation. You're making my point. It may, it goes to comparability. I mean, I understand that point, and I get the analysis that the way it works in South Carolina is different than in the Clean Water Act, and that may be enough to make it not comparable. It may not be, but it doesn't seem to me to have any bearing on whether you've commenced it or not. In all of the cases, the Seventh Circuit case is the most explicit about defining commencement, but every other case from Arkansas Wildlife Federation to McAbee to Jones to Lockett, they all involve situations where the triggering commencement... Arkansas really isn't that helpful. That was the case there, but they even contemplate that the notice of violation would have been sufficient. I mean, I think maybe I'm, you know the cases I'm sure better than me, but I thought Arkansas, you know, sure, and the way it happened there did involve public notice at the time of commencement, but even talking about that scheme, you know, it certainly suggested it might be there in the earlier, through the earlier notice of violation stage. And I'm not suggesting that only an administrative order can satisfy the requirement for commencement, but in that Arkansas Wildlife Federation, the Arkansas statute, even if it was a notice of alleged violation, involved the triggering of public notice and participation protection. What's the harm of just using this issue where it naturally belongs in the comparability analysis? I think that in this particular case, where the district court relied on the issuance of this private notice of alleged violation to satisfy the commencement, to preclude our citizen suit, we have to look at whether that involved, whether that allowed for public notice of participation protection at that moment. And without that, and Your Honor, I'm out of time. You can answer the question. I guess your point is it hasn't really commenced for the world in general until they have notice of it. It becomes problematic if you are able to preclude a citizen suit by entirely private enforcement that citizens and the public were unaware of and had no opportunity to participate in. And so that is the reason for tying the comparability prong to commencement. And it's important to understand that what is required by the Act is providing citizens significant public participation in the administrative enforcement process. Even all of the cases that apply the overall comparability standard emphasize the importance of significant public participation, citizen participation, throughout the decision-making process and at significant stages of that process. I think you've gone well over your time now. You have some rebuttal time. Thank you. May it please the Court. My name is Beth Partlow and I represent the appellees in this case. And as the Court has recognized, this is an effort on behalf of a neighboring property owner to overturn an enforcement or to get more relief than was afforded through the enforcement mechanism. Can you talk just a tad louder? Okay. I believe some of the questions have gone to this question of civil penalty versus injunctive relief that's available under the preclusion of Section 1319G. And the Court is correct that the language there says civil penalty. But in Gwaltney and in many of the other cases that have discussed the interplay between not only the federal government and the state government, but also between the federal and state governments and citizens, they recognize the primary role of the states in enforcing the Clean Water Act. And where the state has taken action, it should not be undone by what a citizen suit comes in and tries to get. Because there's discussion in the briefs about something by the county and something by the state and the briefing seems to consolidate them and I want to see if we can separate them out. Are you relying in any way on the action by the county? Okay. I think the Court discussed that in some detail. It certainly was a significant history there. But I'm glad you say that because I mean I was going to I'm reading I'm looking at G6 and it says in which a state has commenced and last I checked a county is not a state. So it struck me as a fatal problem for any reliance on the county. I think it is probably possible if the state had delegated that authority to a county. In South Carolina, that is not what happens. The counties do have a role. When you particularly for something like a clean water construction permit, the counties review that in the first instance. But enforcing Sure, but the federal law says an action by the state. It does not say an action by an entity designated by the state to do something. And what we have here is the commencement of a state enforcement action. We have state involvement all over the summer of 2019. But we have the commencement of a state enforcement action in September of 2019 when they send a notice. Can I ask you again? This may be sort of like a county is not a state. I have another question that may just reflect that I think this case may not be that hard. Why doesn't 44 CFR 22.13 just say that's wrong that the EPA has defined what commenced means and it does not include sending someone a private letter? Your Honor, I have to tell you, I'm not familiar with what 22.13. Sure, I will put and I may be wrong, which is why I want to give you an opportunity to find the quote. It says the EPA defines, quote, commencement of a proceeding as the filing of, quote, a complaint or, quote, the issuance of a consent agreement and final order. And that is 40 CFR 22.13. And then there's some references to it in 40 CFR 22.38. If that and I understand you're getting it on the fly. And I don't want to. But I wanted to give you a chance to respond. I would request the opportunity to do this a little bit more fulsomely when I've looked. Of course, of course. My recollection is that part 22 is the procedural requirements when EPA is litigating a case. Because in fact, what happens in the administrative. Well, no, and that may well be. But if it is just a general definition of what EPA considers commencement to mean, why wouldn't that bear on our interpretation of what commencement means? Because I don't think EPA defines commencement for purposes of what a federal statute says. EPA commences its own action with a notice of violation when they do an administrative procedure. To get into a review of that, you have to actually have that consent agreement and final order that was referenced in that provision you just read me. So EPA begins its enforcement after it's gone through its administrative process. It either then elects to publish a consent agreement and final order. Or if the parties haven't reached that, then EPA goes to court to seek civil penalties. When EPA is going to impose, when EPA finds somebody in violation, and this is not just Clean Water Act. It's all the statutes they administer. They send a notice of violation. That's also, whether it's publicly available, I don't know. It is certainly not something that is public noticed. So can I ask you a question going a little further into G6? You know, we started with state law and then we said commenced. But now there's another word that we seem to be skipping over. So even if, you know, maybe I can think that the state, when they send this letter, commenced something. That they commenced an enforcement. But obviously, they didn't send the letter for the heck of it. They sent a letter to do something and arguably that commenced something. But then when I read on in the statute, it doesn't say commenced enforcement. It doesn't say commenced inquiries. It says commenced an action. An action. And it strikes me that the word action has a lot of, at least often, has a lot of connotations. And to me, you know, I mean, the classic action is filing a lawsuit in court. I mean, when we say action at law or action in equity. But it's, you know, when we're having this question about whether things like notice are figured into it, I mean, I guess one, even if it commences something in the abstract, help me see how the word action understood as commencing an action. Action in that context is within 1319G, which is solely about administrative penalties. Sure. And so what that section, in our view, says is if the state, and there are provisions there and also borrow where EPA has done this, commences an action under a state statute comparable to the, under a state law comparable to the federal. It also bars citizen suits when EPA commences an administrative action, as it bars citizen suits when the state has commenced an administrative action. And the federal commencement of an administrative action is, once again, that's very similar in OV. So I think all of 13G relates to the process that happens inside the agency as compared to a good bit of the rest of the Clean Water Act that talks about civil actions in court, even criminal actions in court. So in this case, the district court looked at the words that are there in the statute that say civil penalty and agreed with the reasoning of the First Circuit, which just disavowed its own reasoning last week. But there's also language from the Eighth Circuit that reaches the same conclusion. The First Circuit had found... But aren't those, isn't the prior First Circuit opinion, the Eighth Circuit opinion, largely policy-based reasons that this really doesn't make sense? That the whole purpose, like you said earlier, is for the citizen enforcement to be there if the state isn't or can't do its job. That's what Baltany says. But yeah, and there's some appeal to that argument. I get it. There's another argument that, look, the administrative penalties are pretty steep as under the Clean Water Act. It can be, I think, up to $25,000 or something a day. We're going to cut that off, but we're not going to cut the injunction off. So there's at least a plausible way you could distinguish those two. But then you really kind of go to the text, and the only thing that the text says is excluded is administrative penalties under D, which is fine, but there's a lot before D that talks about other things. I'm just having trouble getting past the text into policy and how you can make, if you're looking at the text itself, how you can include injunction in that. Now, you've heard my questions. I think there's some, on the back end, serious problems with the other elements that might be satisfied, but how do you deal with the text? Well, the way you deal with the text is the way the First and Eighth Circuit, First Circuit long ago in the Eighth Circuit, did, which is to say it ends up at an unreasonable result. And that's, part of that is the way the section is structured. If you look, there are actually three kinds of penalty actions that are, two of which refer to sections, one earlier in 1319, which is the EPA administrative penalties, which is a penalty-only section. And then one is to a reference in the Oil Pollution Act, which is also a penalty-only section. And then they throw in the citizen suit where the penalties are all wrapped up in a single provision of the law. And I don't know that Congress considered, I could see a case for where the state had imposed a penalty and had not secured compliance. So they say to an alleged polluter, you're going to pay $300 a day. And the citizen group comes in and says, well, wait a minute, you didn't make them stop. That... Well, but the citizens group might not even know about the action because you don't require there to be any disclosure of it? I mean, that's what I don't understand. I thought in response to earlier questions, you said it doesn't matter that there wasn't a notice of what the state agency did. No, I don't believe that. I said if I did... So everybody knew what they did? Well, in this case, everybody did know. But in the scheme of things, the opportunities to participate, and this goes to the comparability. And there are two questions in that. One is whether you assess it as an overall comparability, which really just looks at penalties, plus whether the state is going after the same kind of relief that's afforded in a citizen suit. Or do you do this rough comparability that some circuits have adopted where you have to do each category of the 1319G procedure? Okay. I'm sorry. We're missing each other. I'm talking about the commencement. I'm still back... You people have gone way beyond me. I'm still back at commencement. Now, is it your position that there was commencement by what the state did here? Yes. And did they make a public notice of that? Yes, but they are not required to. Okay. That's what I thought you had said. There has to be an opportunity. If you use the rough comparability analysis, which we submit is the more stringent and certainly not required. It's what the court applied here. But if you use comparability, there has to be at some point public participation in the process. It could be an appeal. Not necessarily. Not necessarily, but that could be it. Is that what you're saying? Most of the cases that have considered that question have said no. There hasn't been anything in a Fourth Circuit case that has said that. There have been some cases that have found that after everything is already done, the opportunity for appeal is not enough. But that's not all that to be on DHEC's mailing list for facilities. There's the opportunity for people to know what's being considered by the board. There's the opportunity to come in and participate in the board proceeding if you don't like something. And how do people know all that? All public information. So that there was public notice of what the state did here. Is that what you're telling me? There is public availability of the information. Because we have to draw, did they put it in a newspaper? No. But I don't think they're required to put it in a newspaper. What they do make available is the board agenda, the board schedule, and every month what's on that agenda is a list and a summary of every consent order that the agency has done. One of the things that makes the federal system different from the state system is that in the federal system, once it is signed in EPA, it is a final agency decision. In South Carolina, the final agency decision is rendered by the Board of Health and Environmental Control. So there is the opportunity for citizens to participate between the action at the staff level and the final decision. But in this case, we haven't gotten to the order by the time the complaint is filed, right? No. That's the plaintiff's complaint vis-a-vis the public part of the process is important. No, but we have said, I believe, that the timing for assessing whether an action has been commenced in a way to preclude the plaintiff's complaint is determined as, in other words, say that as of the time the plaintiff files their complaint. Again, I know in this case we're debating whether an action was commenced, but assume there was no dispute that at the time the plaintiff files their complaint, no action has been commenced. And then assume that the day after the plaintiff files their complaint, something that is unambiguously a commencement of an action happens. Under our precedent, the plaintiff's suit is not precluded, right? That is correct, because what is necessary to preclude the suit is that the state has commenced and is diligently prosecuting an action under state law comparable to this law. And that, in your view, does not require public notice of the commencement. That is correct. Your response is, am I correct, that the public aspect of that is analyzed in the comparability portion of the analysis, assuming you do a rough approach? Assuming you do rough comparability, then you analyze public participation as one of the three aspects of rough comparability. So if you were to say that, look, the public involvement under any regime is just woefully inadequate, that could still preclude or prevent the applicability of this bar to a citizen's suit. It just does it at the comparability analysis rather than the commencement analysis. Hypothetically, that is correct. You analyze whether a state action has commenced, and the cases are pretty clear that you look to the state's own procedures to see whether an action has commenced. And then are they diligently prosecuting, because you get those cases that come up where the state starts something and then they never quite manage to achieve compliance. And then you say, is it under a statute that is comparable to the federal procedure? And there again, comparability, if you were doing an overall comparability analysis, you just say, are the penalties similar, and is it designed to achieve the same result? But we may not have addressed that before circuit specifically, but the cases arising out of Virginia certainly look at the public involvement, don't they? So does that imply that we are not doing overall comparability and suggest we're doing rough comparability, or at least you've got to consider the public aspect? Well, I think there are district courts all over the place on this issue. Certainly, the district court in this case said we're going to use rough comparability. I'm talking about like the Piney, I think the Piney, I think I'm mixing my cases. Yeah. My recollection is that our circuit has emphasized the importance of the public involvement. At one point in Virginia, that was not there, and that was a reason we precluded the applicability of the Citizen Soup Bar. So, I mean, whether we go with rough or overall, I mean, that seems like something the Fourth Circuit has already spoken is important. Well, I think in Piney Run, the question was whether the member of the public or an affected person had any opportunity to participate at all. As I recall, the statute at issue there didn't let anybody, I don't even think the agency had the authority to impose an administrative penalty without the consent of the alleged violator, if I'm remembering the facts of that case correctly. It was way different than this, I don't remember. It's hard to extrapolate a lot out of that, but in a case like this where the state agency in fact did secure exactly the relief that these plaintiffs or the appellants were looking for, that's even more reason to have a bar here. How do you say that? I mean, maybe the case, a lot of the notice of violation is about plans that are not yet in place. So, I mean, I can certainly say, I can certainly see that the plaintiffs say, no, no, no, we've identified the same violations, but what you've required to cure them is inadequate. How do you say you've achieved the same relief that the citizens groups are seeking? Well, in this case, what they are seeking is a cessation of the unpermitted discharge. The allegation is that for a period of time there was grading activity and there was no coverage under a stormwater construction permit. The state administrative action secured the permit or imposed the permit requirement as one of its conditions. It actually went further than that. It required them to get a permit. It required them to assess the condition of the streams. Yeah, but they also, in their complaint at least, they're asking for, you know, remediation of the dam. You know, they're asking for the remediation of any discharge of sediments that has happened, and maybe those will be part of what comes from the consent order, but do we really know you've solved all that? I'm not saying that is necessarily the standard, but you've kind of made the point that you've gotten the relief they want. Actually, the relief they want. I suspect they differ. I suspect they do too. Yeah. If we have to argue about that later, we will. Certainly at this point, what we have is a complaint that says you were releasing sediment without a permit, DHEC said get the permit, and then go out there and assess whether there's a problem that's being created, and those two things have been satisfied. At some point, this case probably becomes moot. At this point, we've got these questions of the bar and that kind of thing. So what we have argued and what we believe to be correct is that Section 1319 ought to bar both kinds of relief. One of the reasons you have an interesting way that this came up is that that was not a basis discussed in front of the district court. The district court raised that issue himself in a footnote, so we've briefed it here, and there is more argument for the reason that civil penalties should not be read so restrictively. We've also argued that the court should impose or should set forth an overall, I mean an overall comparability standard for assessing whether a state procedure is similar to a federal procedure that's consistent with what the Clean Water Act says is the primary role of the states in enforcing it. How the states choose to do this, EPA comes and evaluates the program and says we think it comports with it, you have the necessary tools, you have the necessary procedures to enforce the law, and they give the states promise for enforcement of the Clean Water Act that that ought to be honored when a citizens group comes in and says we don't like what the state did, we want you, federal judge, to make them do something different. Thank you very much. Your Honors, I'd like to begin first with the idea that it's unreasonable for Congress to have precluded only civil penalties under the diligent prosecution provision. Congress made a reasonable choice to set up this two-tiered preclusion scheme where under 1365b all actions are precluded when a state or federal agency has initiated judicial action in a federal or state court. And to read the diligent prosecution provision in 1319 to also bar all actions, it eliminates the meaning in that statute when it states civil penalty actions are the ones that are precluded. And so it is not unreasonable for Congress to have done that and courts should give the meaning to the statute, to the text that Congress has adopted. The legislative history surrounding the adoption of that amendment further supports this reading that Congress fully intended that only civil penalty actions would be precluded under 1319. I think we understand your position on that. Maybe you could direct your attention to the issues that were decided by the district court here and that you challenge. Yes, Your Honor. In terms of commencement. Right, that would be an issue. Yes, I'd like to follow up on what Judge Heightens noted about 40 CFR 2213. And that scheme 40 CFR part 22 sets up the administrative penalty procedures or administrative penalty proceedings under section 1319. And it specifically establishes that commencement of a proceeding can occur in those two ways through the filing of a complaint with a hearing officer or through the issuance of a proposed consent agreement and final order. In either instance, 40 CFR 22.45 requires public notice of either of those instances. And so I think that clearly signifies that commencement of an action, commencement of a proceeding, is tied in with the triggering of public notice of protections. And in addition, Arabelle Farm acknowledges that no public notice was given of the notice of alleged violation and claimed that it's not required. We certainly disagree that it is not required. And for an action to preclude a citizen suit under 1319, the action has to commence before the filing of the citizen suit. And the only enforcement action that did anything to address the violations and to require any sort of compliance with the act occurred only after the filing of the citizen suit. Counsel, did you argue in your brief, you may have, so we got a lot of papers and I may have missed it, but did you argue this CFR regulation in terms of commencement in your briefs? I believe I did, Your Honor, and I'm in my reply brief in reference to Arabelle Farm's argument that an action commences with a notice of violation and that those are not public. I'm not seeing it in the opening brief. Maybe it was in the reply, but it may be in there and I missed it. So that's okay. I can check. And Arabelle Farm argues that public notice is not required and points entirely to a series of public notice of participation measures that are triggered only after some final order, which simply did not exist here until after the filing of the suit. But that's, you say final order, to be sure, in order, and that's on the agenda, and that's, the agenda's public, a description of the order's public, but it's not final until the DHEC votes on it, correct? I mean, there's an agreement and there's an order, but I think, I don't think it's, maybe it is, maybe your argument is that it's final. Before DHEC votes on it, there is public notice that there's going to be a meeting about an enforcement order. Isn't that correct? These consent agreements are placed on a agenda that the DHEC board considers in a effectively ministerial fashion. And so your case, we contend that that is inadequate public notice, but moreover, that any public notice that occurs would have only occurred after the filing of this suit and cannot preclude our, the filing of this suit, and the notice of alleged violation indisputably did not have any public notice. Your honors, we would ask the court to reverse the district court's decision, find that the plain language of the statute bars only claims for civil penalty actions, and further that the district court's finding that this entirely private, informal enforcement activity that occurred prior to filing of the suit commenced an action that had preclusive effect and respectfully ask the court's reversal. Okay, you're over time, so this is my time. I'm going to ask you one question. If we should decide for you right now, what would your role be then? We would ask the court to remand so that we can move forward with our suit and prove the violations that occurred and obtain relief that's authorized by the citizen's supervision. You would be acting in parallel with the state or against the state? How do you see that? We would be, well, we contend that the state's enforcement action doesn't really have much effect here and does not bar our suit in any way, but our role would be to establish the violations that Arabella formed. So it would be parallel with the state? You wouldn't be, yeah. Okay, thank you. Thank you both for your arguments. We're sorry that we cannot come down and greet you. We hope the next time you're in the Fourth Circuit we will be able to do that. Have a good day.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Toby J. Heytens